FILED

MAY 0 6 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

MAY 0 7 2004

Herbert W. Benton, Jr. )
)
Plaintiff, )
)
v. ) Civil Action No. 02C-2725
)
United States of America, ) Judge Manning
)
Defendant. )

---

**STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF**
**FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677**

It is hereby stipulated by and between each of the undersigned plaintiffs (meaning any person
-- other than the plaintiffs' counsel, the defendant and its counsel, and the structured settlement
broker -- signing this agreement, whether or not a party to this civil action, including Mildred
McClinon), and the United States of America, by and through their respective attorneys, as follows:

1. The parties do hereby agree to settle and compromise each and every claim of any kind,
whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise
to the above-captioned action under the terms and conditions set forth in this Settlement Agreement.

2. This Stipulation For Compromise Settlement And Release (hereinafter "Stipulation") is
not, is in no way intended to be, and should not be construed as, an admission of liability or fault
on the part of the United States, its agents, servants, or employees, and it is specifically denied that
they are liable to the plaintiffs. This settlement is entered into by all parties for the purpose of
compromising disputed personal injury claims under the Federal Tort Claims Act and avoiding the
expenses and risks of further litigation.

3. The United States agrees to pay the undersigned plaintiffs the cash sums set forth below

Herbert W. Benton, Jr., v. United States
Stipulation For Compromise Settlement And Release     **Page 1 of 15**

in Paragraph 3.a, to purchase the annuity contracts described below in Paragraph 3.b, and to establish the Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust (hereinafter "Reversionary Trust") described below in Paragraph 3.c.

a. Within three business days after counsel of record for the United States receives (i) this Stipulation signed by all parties to said document; (ii) the Reversionary Trust signed by all parties to said document; (iii) a court Order approving the settlement on behalf of any legally incompetent or minor plaintiff; (iv) the Social Security numbers or tax identification numbers of plaintiffs and their attorneys; and (v) an authorization by the Attorney General or his designee to conclude negotiations and to consummate the settlement, Counsel for the United States will send a formal request to the Department of the Treasury that the sum of Three Million Five Hundred Thousand Dollars ($3,500,000.00)(hereinafter "settlement amount") be expeditiously wired to the Special Custodial Trust Account of JMW Settlements, Inc., at M & T Bank, 1899 L Street, NW, Washington, D.C. 20036. JMW Settlements, Inc., agrees to distribute the settlement amount, as provided below in Paragraphs 3.a.i. and 3.a.ii., within five business days after JMW Settlements, Inc., receives a notice from M & T Bank that the settlement amount has been received into said Special Custodial Trust Account.

i. On behalf of the plaintiff, the sum of Two Million Dollars ($2,000,000.00) to be paid as follows:

(a) To the Lawyers Trust Fund Levin & Perconti account at Cole Taylor Bank, Chicago, Illinois, the cash sum of One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00); and

(b) To an annuity company, rated at least A+ by A.M. Best rating service, the sum of Seven Hundred Fifty Thousand Dollars ($750,000.00) to purchase the annuity contract described in Paragraph 3.b.i, below.

ii. For the funding of the Reversionary Trust described below in Paragraph 3.c, the

sum of One Million Five Hundred Thousand Dollars ($1,500,000.00) to be paid as follows:

(a) To an annuity company, rated at least A+ by A.M. Best rating service, the sum of One Million Dollars ($1,000,000.00) to purchase the installment refund annuity contract described in Paragraph 3.b.ii, below; and

(b) To the Reversionary Trust, the sum of Five Hundred Thousand Dollars ($500,000.00).

The parties agree that any attorneys' fees owed by the plaintiffs in this action against the United States shall not exceed 25% of the settlement amount (28 U.S.C. § 2678). The parties further agree that any such attorneys' fees, along with any costs and expenses of said action against the United States, and any costs, expenses, or fees (including legal fees) associated with obtaining any court approval of this settlement, will be paid out of the amount paid pursuant to Paragraph 3.a.i.(a), above, and not in addition thereto. The parties agree that any legal fees, including guardian ad litem fees, incurred in obtaining any court approval of this settlement shall be considered attorneys' fees and not costs, and shall be subject to the provisions of 28 U.S.C. § 2678.

The plaintiffs stipulate and agree that they are legally responsible for any and all liens or claims for payment or reimbursement, including any liens or claims by Medicaid or Medicare. Plaintiffs and their attorneys stipulate and agree that the plaintiffs, by and through their attorneys, will satisfy or resolve any and all liens or claims for payment or reimbursement asserted by any individual or entity before distributing to plaintiffs any portion of the amount paid pursuant to Paragraph 3.a.i.(a), above. The plaintiffs and their attorneys further agree that, no later than ninety (90) days from the date the United States wire transfers the settlement amount, plaintiffs' attorneys shall provide to the United States evidence that each such lien or claim has been satisfied or resolved and that all lienholders and claimants have waived and released all such liens and claims. The

evidence required by the terms of this Paragraph may be satisfied by a letter from plaintiffs'

attorneys representing to counsel for the United States that each such lien or claim has been satisfied

or resolved and that all lienholders and claimants have waived and released all such liens and claims.

b. The United States will purchase annuity contracts to make the following payments:

i. To Herbert W. Benton, Jr., the sum of $4,385.13 per month, for ten (10) years
certain and the life of Herbert W. Benton, Jr., beginning thirty days after the date the
contract is purchased, increasing at 3.0% compounded annually after the first year
of payments. In the event the cost of the annuity has increased or decreased at the
date the annuity contract is purchased, the monthly payment described above shall
be adjusted downward or upward accordingly to ensure that the total cost of the
annuity shall not be more or less than Seven Hundred Fifty Thousand Dollars
($750,000.00). In the event of the death of Herbert W. Benton, Jr., during a period
of certain payments, all remaining certain payments purchased pursuant to this
Paragraph 3.b.i. shall be made payable to the Estate of Herbert W. Benton, Jr., or to
any secondary beneficiary designated by him during his lifetime, provided that any
such designation shall be in writing and in a form acceptable to the United States and
the annuity issuer.

ii. To the Reversionary Trust described below in Paragraph 3.c., the sum of
$5,566.65 per month, for the life of Herbert W. Benton, Jr., and the period of the
installment refund, beginning thirty days after the date the installment refund
contract is purchased, increasing at 3.0% compounded annually after the first year
of payments. In the event the cost of the annuity has increased or decreased at the
date the installment refund annuity contract is purchased, the monthly payment
described above shall be adjusted downward or upward accordingly to ensure that
the total cost of the annuity shall not be more or less than One Million Dollars
($1,000,000.00). In the event of the death of Herbert W. Benton, Jr., during any
period of installment refunds specified in this Paragraph 3.b.ii., all remaining
installment refund payments shall be made payable to the United States Treasury and
sent to the Torts Branch, Civil Division, United States Department of Justice, P.O.
Box 888, Benjamin Franklin Station, Washington, D.C. 20044, or, upon written
notice, any subsequent change of address.

The annuity contracts being purchased pursuant to this Paragraph 3.b. will be owned solely

and exclusively by the United States and will be purchased as soon as practicable following the

execution of this Stipulation. The parties stipulate and agree that the United States' only obligation

with respect to any annuity contract and any annuity payments therefrom is to purchase the annuity

contract, and they further agree that the United States does not guarantee or insure any of the annuity payments. The parties further stipulate and agree that the United States is released from any and all obligations with respect to any annuity contract and any annuity payments upon the purchase of the requisite annuity contract.

The parties stipulate and agree that the annuity company that issues an annuity contract shall at all times have the sole obligation for making all annuity payments. The obligation of the annuity company to make each annuity payment shall be discharged upon the mailing of a valid check, a direct deposit, or an electronic deposit, in the amount of such payment to the address or account designated by the party to whom the payment is required to be made under this Stipulation. Payments lost or delayed through no fault of the annuity company shall be promptly replaced by the annuity company issuing the payment.

The parties stipulate and agree that the annuity payments cannot be assigned, accelerated, deferred, increased, or decreased by the parties, that no part of any annuity payments called for herein or any assets of the United States are subject to execution or any legal process for any obligation in any manner, and that the plaintiffs shall not have the power or right to sell, assign, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise.

Plaintiffs and their guardians, heirs, executors, administrators, or assigns do hereby agree to maintain with the annuity company and the United States a current mailing address, and to notify the annuity company and the United States of the death of Herbert W. Benton, Jr., within ten (10) days of death.

c. The United States will establish, as the grantor, an Irrevocable Reversionary Inter Vivos

Grantor Medical Care Trust for the benefit of Herbert W. Benton, Jr., a copy of which is attached hereto and incorporated by reference.

Plaintiffs and their successors, assigns, or guardians agree to provide to the administrator and trustee of said trust any information, documentation, authorizations, or signatures required by the terms of the trust or by the administrator or trustee in administering the terms of the trust. The parties agree that the failure to provide such information, documentation, authorizations, or signatures may result in the denial, in whole or part, of payments from the trust estate, depending on the terms of the trust.

Plaintiffs and their heirs, executors, administrators, or assigns do hereby agree to maintain with the trustee, the administrator, and the United States a current mailing address, and to notify the trustee and the United States of any event upon which the right of payments from the trust estate may depend, including the death of Herbert W. Benton, Jr., within ten (10) days of the date of such event.

Upon the death of Herbert W. Benton, Jr., the trustee shall, to the extent permitted by the terms of said trust, pay allowable charges, expenses, and benefits, and liquidate and distribute the remaining trust estate to the United States by check made payable to the United States Treasury and sent to the Torts Branch, Civil Division, United States Department of Justice, P.O. Box 888, Benjamin Franklin Station, Washington, D.C. 20044, or, upon written notice, any subsequent change of address.

4. Plaintiffs and their guardians, heirs, executors, administrators, or assigns do hereby accept the cash sums set forth above in Paragraph 3.a., the purchase of the annuity contract set forth above in Paragraph 3.b., and the establishment of the Reversionary Trust set forth above in Paragraph 3.c.,

in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, including any future claims for wrongful death and any claims for fees, post-judgment interest, costs, and expenses, arising from, and by reason of, any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, death, or damage to property, and the consequences thereof, which the plaintiffs or their heirs, executors, administrators, or assigns may have or hereafter acquire against the United States, its agents, servants, and employees on account of the same subject matter that gave rise to the above-captioned action. Plaintiffs and their guardians, heirs, executors, administrators, and assigns do hereby further agree to reimburse, indemnify, and hold harmless the United States and its agents, servants, and employees from and against any and all such claims, causes of action, liens, rights, or subrogated or contribution interests incident to, or resulting or arising from, the acts or omissions that gave rise to the above-captioned action, including claims or causes of action for wrongful death.

5. This compromise settlement is specifically subject to each of the following conditions:

a. The Attorney General or the Attorney General's designee must approve the terms of the settlement and authorize the attorney representing the United States to negotiate and consummate a settlement for the amount and upon the terms and conditions agreed upon by the parties, as set forth in this Stipulation.

b. The parties must agree in writing to the terms, conditions, and requirements of this Stipulation, the annuity contract, and the Reversionary Trust. The parties stipulate and agree that the Stipulation and the compromise settlement are null and void in the event the parties cannot agree on the terms, conditions, and requirements of this Stipulation, the annuity contract, or the Reversionary Trust. The terms, conditions, and requirements of this Stipulation are not severable

and the failure to agree, fulfill, or comply with any term, condition, or requirement renders the entire Stipulation and the compromise settlement null and void. The authorization by the Attorney General or the Attorney General's designee to negotiate and consummate a settlement for the amount agreed upon by the parties does not make the settlement binding upon the United States unless and until the other terms, conditions, and requirements of this Stipulation have been completely agreed upon in writing.

c. Herbert W. Benton, Jr., must be alive at the time the annuity contract being purchased pursuant to Paragraph 3.b., above, is purchased and at the time the Reversionary Trust being established pursuant to Paragraph 3.c., above, is "deemed established," as the phrase is defined in Article V of the Reversionary Trust. In the event of the death of Herbert W. Benton, Jr., prior to the date the annuity contracts are purchased and the Reversionary Trust is deemed established, the entire Stipulation and the compromise settlement are null and void.

d. Plaintiffs must provide the United States with a complete set of the medical records of Herbert W. Benton, Jr., (including any and all clinic visits, whether for routine checkups or for treatment and care for any medical condition, injury, disease, etc., any and all hospital and emergency room records, and any records of any diagnostic testing) for the past 24 months for inspection and review by the United States or any medical consultant retained by the United States. In the event said complete set of such medical records does not contain reports of a complete medical examination, including routine cancer, cardiovascular, and pulmonary screens, HIV screening, liver function screening, plaintiffs must have a complete, comprehensive examination (including routine cancer, pulmonary, and cardiovascular screens, HIV, hepatitis, epidural abscess), the United States reserves the right not to recommend the settlement for approval by the Attorney

General or his designee and the settlement is null and void.

e. Plaintiffs must obtain at their expense an Order by a court of competent jurisdiction approving the terms of the settlement on behalf of any minor or any incompetent adult being required to sign this Stipulation. All such court Orders must be obtained prior to the United States' seeking approval from the Attorney General or his designee. The terms of the required Orders must be approved by the Department of Justice's Torts Branch prior to being submitted to any reviewing Court and the Order(s) signed by such Court cannot be changed by the Court or parties without the prior written consent of the Torts Branch. Plaintiffs agree to obtain such court Order(s) in a timely manner: time being of the essence. Plaintiffs further agree that the United States may void this settlement at its option in the event such court Order(s) is/are not obtained with respect to each party to this action and each non-party to this action in a timely manner. In the event plaintiffs fail to obtain such court Order(s), the entire Stipulation and the compromise settlement are null and void.

f. Plaintiffs must obtain from any State, private entity, or private individual who has or may have in the future a claim or cause of action against the United States (and its agents, servants, and employees) arising out of the subject matter of the above-captioned action a waiver and release of such claim and cause of action. For purposes of this Stipulation, a claim or cause of action includes, but is not limited to, a claim or cause of action for reimbursement for (a) any payments made to or on behalf of the plaintiffs and (b) any goods or services provided to the plaintiffs.

6. Subject to the terms and conditions set forth in Paragraph 3.a., above, plaintiffs' attorneys agree to distribute the settlement proceeds paid pursuant to Paragraph 3.a.i.(a), above, to the plaintiffs after paying or resolving any lien or claim for reimbursement or payment for which plaintiffs have agreed to be legally responsible under the terms of this Stipulation. Plaintiffs'

attorneys further agree that immediately after distributing the settlement proceeds they will file with the United States District Court for the Northern District of Illinois a dismissal of this action with prejudice, with each party bearing its own costs, expenses, and fees.

7. The parties agree that this Stipulation, including all the terms and conditions of this compromise settlement and any additional agreements relating thereto, may be made public in their entirety, and the plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

8. It is contemplated that this Stipulation may be executed in several counterparts, with a separate signature page for each party. All such counterparts and signature pages, together, shall be deemed to be one document.

Executed this _6th_ day of ___May___, 2004.


_M Calvano_
Nikki Calvano
Assistant United States Attorney
Northern District of Illinois
Attorney for Defendant,
United States of America

Executed this 4th day of MAY , 2004.

John Joseph Perconti, Esq.
Levin & Perconti
Attorney for Plaintiffs

Executed this _____ day of _____, 2004.

_____
William G. Pintas, Esq.
William G. Pintas & Associates, Ltd
Attorney for Plaintiffs

Executed this ____4____ day of ____5____, 2004.

*Herbert W Benton Jr*

Herbert W. Benton, Jr., Plaintiff

Executed this _____ day of _____, 2004.

_____
Mildred McClinon

Executed this __29th__ day of __April__, 2004.

Mark S. Feldheim for
JMW Settlements, Inc.

## AFFIDAVIT OF MAILING

STATE OF ILLINOIS    )
                             )
COUNTY OF C O O K    )

        R. McCarthy, being first duly sworn on oath deposes and says that she is employed in the

Office of the United States Attorney for the Northern District of Illinois; that on the 6th day of

May 2004, she placed a copy of

STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF FEDERAL TORT
CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677

in a stamped envelope addressed to each of the following named individuals, and caused each

envelope to be deposited in the United States mail chute located in the Everett McKinley Dirksen

Building, Chicago, Illinois, on said date at the hour of about 5:00 p.m.

John Perconti
325 North LaSalle Street
 Suite 450
Chicago, Illinois 60610

R. McCarthy

SUBSCRIBED and SWORN to before me
this 6th day of May 2004

Leslie Steffen
**NOTARY PUBLIC**

My Commission Expires: 8 - 30 - 06

"OFFICIAL SEAL"
Leslie L. Steffen
Notary Public, State of Illinois
My Commission Exp. 08/30/2006